Good morning, Your Honors. Reynold Finnegan on behalf of the petitioner. I call her Kachi-NACHI. And how do we pronounce the name? Kachi-NACHI-ANYDIEGWU. Ah, okay. Thank you. I try not to pronounce that one. In this case, it's an asylum matter, and petitioner was judged credible by the BIA after the immigration judge originally said she was not credible. There's also been an event that has been judged that she was harmed. So the question of the BIA, the reason they denied the case was the BIA said that the reason she was harmed was not on account of one of the five protected grounds under the asylum regulations. Now, this is a Ninth Circuit jurisdiction, and mixed motive is accepted. If you notice in my reply brief, I noted the Tarabak case, which states that it doesn't matter what the percentage of allocation goes to the protected ground and which percentage of the motive of the persecutor goes to a non-protected ground. For instance, if the persecutor has an economic interest or is making unwanted sexual advances, that necessarily is not protected by asylum regulations. However, the part that is protected is her political opinion that she was against these gangs that operated at these universities. She was a college student. Once she made this expression that she was against these gangs which operate connected to the government. There's a lot of questions as to what type of connection there is, but there is proof in the record that there is some sort of connection. So once she makes this expression, her friend who's the leader of this gang member, his expression changes and he views her differently. He always said he wanted her to be a friend. Now, we interpret that to mean unwanted sexual advances. But once she made that expression that she was against the gangs. Can you tell me exactly where and how and to whom she made this expression? To that leader. Yeah. His name is OB. How? Verbally. What did she say? She said that he wants her to become a member of the gang, become his girlfriend. And she said, I don't like the gangs. In fact, I don't like the fact that they can operate with impunity and they don't have anybody. When they kill somebody or they hurt somebody, they're not charged with anything. And that was her expression. But how does that become political opposition to the gang? She just doesn't like the gang. Right. There's another case that says – there's other cases that say if you're against these gangs that are operating with the government, it's an expression that you're against them. Then they view you as being against them, and that's a political opinion. On the other issue, FGM we'll call it. Right. What's your position on that? My position on the FGM is that that would fall under asylum and also the torture convention. It would be an element of torture. It's a ground that allows you to receive asylum in the United States. Right. You could receive asylum straightforward and also under the torture convention. And the BIA wasn't impressed with that. Yeah. The BIA said that it was speculative. Anytime you talk about a future – events in the future, there's going to be some element of speculation. All she claimed was a 51% chance that we have to prove more likely than not. Now, her father said to her sister he was going to make her undergo FGM. Now, he didn't say it directly to my client. He said it to her sister. How many other sisters had he forced to undergo FGM? Two other sisters. How do we know that? Well, her testimony in court was that my sister told me that I was forced to undergo it. So her credible testimony is that two of her sisters were forced to undergo FGM as a result of her father's will. Correct. In her declaration, which appears at the administrative record at page 240, she says at the bottom, I was scared, depressed, and had no life, and beyond the threats from the gang members, attacks up Christians were escalating. And here's the part that I'm curious about. And my father was looking for me, and upon my 18th birthday, he planned to circumcise me with the help of other local leaders. Recognizing that I was in danger, I left. My father was looking for me upon my 18th birthday. Do we accept that as true? The father was looking for her, planning to circumcise me? I mean, this seems to have gotten lost in the record. Right. The father did make a statement that he wanted his daughter to undergo the FGM. You don't refer to this in your brief. Okay. Is there any reason why this is left out of your brief? It's just oversight, then. I should have referred to it. I mean, the other side says this is speculation. And here we have a statement from her. My father was looking for me. Upon my 18th birthday, he planned to circumcise me with the help of other local leaders. And that's pretty much corroborated, if you believe her testimony, by what happened to the other two sisters. Right. I was just curious why this didn't show up anywhere. I was thinking the oral testimony was enough. But you're right. It's corroborated by written testimony as well. Well, we'll find out from the other side whether it is or isn't. Okay. Can I reserve my remaining time for blood work? Can you just explain to me the business of, you know, she says she's accepted in medical school in some other part of Nigeria. Why isn't she going to be safe if she goes there? Well, if there's background documentation that shows these gangs, which are gangs slash cults, we call them, operate in every single university, even the medical school. How about from her father? From her father? If her father was to locate her, then he would make her come back to the village and undergo the FGM procedure. That's what she honestly believes. I don't know. She's in another part of the country. He can kidnap her. I don't. I mean, if he was to find her and undergo that, or if she was to visit her hometown at one point in time, somebody could grab her. You know, she's not going to be in that one city her whole life at school. Okay. Okay. If there's no more questions, I would like to reserve the remaining time for a bottle argument. Okay. Reserved. Good morning. May it please the Court. My name is Cindy Ferrier, and I'll be representing the Attorney General in this matter. The Court knows that it applies a substantial evidence standard in order to review asylum determinations by the agency. So that means that the Court considers the evidence in the case and determines whether it compels the conclusion contrary to the Board of Immigration Appeals. Do we see her as a credible person across the Board with respect to all the evidence? The Board did say that it would deem her testimony to be credible. So what do you do with that part that I just read, for your benefit more than opposing counsels, where she says, my father was looking for me in order to force me to undergo FGM? Right. But that's credible. Doesn't that suggest that the father was actually after her to follow up on what he had already done to her two sisters? It does suggest that, but that's where the Board found her fear to be speculative. What's so speculative if the father shows up having done it to two other sisters in order to do it to her with local tribespeople? Correct. But the reason that they found it to be speculative was because she did turn 18 while she was there, and she lived with her sister at the time where her parents had sent her to live. So her parents were very aware that that's where she was. She was, in fact, 18 for approximately – she turned 18 in November, and then she came to the United States in October, the following October. So therefore, she was there for approximately 10 to 11 months. Is there some rule that says that if you make it to 19, your father won't subject you to FGM,  No, but it was per her own testimony that the Board considered 18 as the time that he would look for her and would actually make her undergo FGM. It strikes me as if the father has already done this to two other sisters. Actually three, I believe. Three other sisters? That's her testimony, yes. And if you accept what she says at 241 that he's looking for her, isn't that a laydown in her favor? It's more likely than not she has a well-founded, genuine fear that this is going to happen to her? Again, I believe that that's true, that that would be, but that's why the Board found that it wasn't actually – that her fear was speculation because she had turned 18 and she lived there. So it's not speculation only if he succeeds in doing it to her? Well, I guess what the Board determined was that her fear was based upon – with regard to her specifically, was based upon her sister's statements to her. And the fact that it happened to the sister. Yes, but with regard to her specific fear as to when it would happen to her, how, you know, that her father would come and take her. But the record doesn't show, in fact, that her father ever told her sister. This is what I don't get. I don't see why it's important that the father ever make a statement with regard to her. I mean, if he thinks the sister's opposed to it and that she's opposed to it, wouldn't he be a little more sneaky than to come right out and say, I'm going to do it tomorrow? That part of your argument I didn't think flew too well. Well, that part of my argument is based upon the Board's decision in the case, and that's what they, in fact, cite here, is simply the fact that it is based upon her sister's speculation. And that was the grounds that they found to rely on here. And based upon her testimony and her claim specifically, it was initially, I will be put, I will be forced to undergo this FGM practice on my 18th birthday. On her 18th birthday, her father knew where she was, could have located her, and yet did not do so. And since no statements had been made to her specifically regarding her, the FGM, nor to her sister, that's how the Board, I think, arrived at the conclusion that that portion of her claim was, in fact, speculation. But, again, it's not a credibility determination. It's not finding her credibility at issue with regard to what she subjectively believes, but just whether it's subjectively reasonable in light of what actually happened to her. So, with regard to FGM, that is the basis for the Board's decision. With regard to the fear of harm by the cult members, although this Court does apply a mixed motive test for the motivation behind the persecution or the harm, here, the Court still requires some evidence as to what the motivation was of the persecutors. Here, she doesn't provide any sort of indication that it was on account of a protected ground. In fact, she said she didn't know, in fact, why he was after her. She said she told him that she didn't like gangs, and that he turned red, but then immediately said only that they should be friends. So he never gave her any reason, necessarily, to believe what it was on account of. So he only repeatedly said, in all of her testimony, it never says that he made any other statements with regard to the reasons for the persecution, other than the fact that he wanted to be friends or lovers, and that that was, in fact, spurned. So she had five sisters. Yes. And all the older ones had been forced to undergo FGM. Yes. And the only ones who had not been forced to undergo FGM, which doesn't apply until you're 18, were the sisters who were 11 and 14. Yes. So all the older ones and none of the younger ones. According to her testimony. And she's next. And you say according to her testimony. Given the BIA's conclusion that she's credible, we take that testimony as truthful. The testimony is truly truthful. Now, assuming that we disagree with the BIA and say that this really is enough to amount to a well-founded fear to justify consideration for asylum, is there anything we should remand for? Do we simply say grant the petition with respect to innocence or asylum? No, remand is required under Ventura on the basis that the board still needs to make the determination in its discretion as to whether asylum should be granted or not granted. Oh, but there are two kinds of remand. One of them is remand to determine whether she's eligible for asylum. As far as? And the other one is the Attorney General's determination as to whether to grant it. What kind of remand are you talking about? Well, certainly you must at least do the discretionary. Yes. But you said Ventura, which is really to remand for determination as to eligibility for asylum. Well, if we have disagreed with the BIA and said no, her credible evidence is sufficient to compel the conclusion, what is there to remand for under Ventura? It's sufficient to compel the conclusion that she has a well-founded fear. Then I believe it's for the discretionary aspect. Simply for the second, the normal kind of. Actually, I'm sorry. If you did find that there were a well-founded fear, it would still need to be remanded under Ventura for the possibility that there may be, that the government may rebut that well-founded fear. Because since the immigration judge and the board, in fact, did not find a well-founded fear, the burden was never placed upon the government to rebut that particular finding. So the regulation. Well, but wouldn't the government have put that into the record at the, in front of the IJ? They had the full opportunity to rebut. They might not have had a chance to make the full argument based upon where we now are. But the evidence is in the record, isn't it? The evidence would be in the record. However, if it goes back for the factual determination, then, in fact, they could introduce more evidence if the board deems that it needs to go all the way back to the immigration judge. Why would they get a chance to introduce more evidence? Well, only because they didn't know that a well-founded fear was at issue. Well, of course they knew it was at issue. That was the fight in front of the IJ. Yes, but the IJ didn't make that determination. No, maybe we're still talking across purposes. At the time at which both sides are introducing evidence in front of the IJ, on the table is, does she establish a well-founded fear? The government knows that that's a possibility that she will do so, and the government introduces whatever evidence it has that she has not. And you're saying now that we, on hypothetical, that we conclude that she has presented compelling evidence, you're saying the government now gets to go back and introduce evidence that was fully on notice, it should have produced the first time around in front of the IJ? Ventura doesn't say you get to reopen the case for new evidence. Excuse me? Ventura doesn't say you get to reopen the case for new evidence. But it does. It says it has to go back for decisions not made. This decision was made. And if we decide it's wrong, then it's a discretionary question. Well, it certainly is a discretionary remand. Okay. If there's nothing further. Okay. Thank you. And you've saved some time. Good morning, Your Honors. I would like to respond to government's counsel that, in this case, the evidence record does compel an alternative finding based upon asylum on the mixed motive theory, also under the FGM theory. Asylum is a discretionary form of relief. However, withholding of removal and the patent claim, the patent convention against pressure, are mandatory. So those do not need to be remanded for discretionary grants. And you think the evidence compels withholding of removal and cap? Yes, on an FGM basis. But also, on the asylum claim, you know, we have a strong case based upon the mixed motive, that this person became very violent to her after she expressed that she was against these cults operating on campuses. Now, do you have, I confess I've not independently researched this one, but do you have FGM cases that tell us that that qualifies under CAT? Let's see. Sorry to talk in initials. Let's see. The case, I know there has been cases, but the academic case is FGM, but that one under asylum. Yeah, I'm familiar with that line of cases. Yeah, not under the CAT claim. And similar question with respect to withholding of removal. Both of them are different and to some degree higher standards than eligibility for asylum. Correct. Withholding and CAT claims are based on whether it's more likely or not that you would be harmed in the future. Tortured in the future is the CAT claim, harmed in the future is the withholding claim. And in this case, I believe that she qualifies as more than 51 percent likely she would be harmed if she returned to Nigeria. I can't point to the specific case, but I know that it exists. Okay. Thank you. Thank you. Thank you very much. The case of Nachiu versus, and I'm going to have trouble with, Andiegu versus Gonzalez is now submitted for decision. Thank both sides for a helpful argument. Thank you, Judge.
judges: Trott, W. Fletcher, Restani